**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **VS.** | : | **CR.NO: 05-00135 S** |
| | : | |
| **JUAN DESIDERIO RODRIGUEZ** | : | |

**MOTION FOR DOWNWARD DEPARTURE**

NOW COMES the Defendant, JUAN D. RODRIGUEZ, and respectfully ~~gives~~ moves this Honorable Court to provide a downward departure in his sentencing for the following reasons:

1. USSG 5H1.6 Family Ties and Responsibilities; and
2. The mitigating circumstance of the absence of a "fast track" disposition reward program in the District of Rhode Island.

In support of this Motion Juan incorporates by reference his memorandum hereto and respectfully requests a downward departure for his adjusted offense level to fourteen (14) with a range of 18 - 24 months, and his agreement to a waiver of his due process immigration removal hearing rights, and he agrees to be deported forthwith.

Defendant ,
**JUAN DESIDERIO RODRIGUEZ**
By his attorney
MARK B. LAROCHE, ESQ. #4681
10 Dorrance Street Suite 515
Providence, RI 02903
(401) 751-1919

**CERTIFICATION**

I, the undersigned, hereby certify that a true copy of the foregoing Motion was served on March 23, 2006 to Stephanie Brown, Assistant U.S. Attorney, U.S. Attorney's Office, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **VS.** | : | **CR.NO: 05-00135 S** |
| | : | |
| **JUAN DESIDERIO RODRIGUEZ** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE**

## I. FACTS

Defendant incorporates by reference the Prosecution Version of the facts in Part A. #9 and Defendant's handwritten letter translated in last pages of the of the Presentence Investigation Report in this matter, as the facts in this matter.

## II. Family Ties

Pursuant to USSG 5H1.6 Family Ties and Responsibilities (attached) the continued loss of Juan's essential care taking and financial support to his wife Eldi (age 27), and daughters Lilly (age 9) and Charli (age 4 months) will substantially exceed the harm ordinarily incident to incarceration in light of:

a) His self reporting that the simple , humble house they lived in Guatemala was destroyed by floods, and by trees and

rocks falling on it (see attached United Nations OCHA report dated 9 Oct. 2005 w/ maps); and

b) His confused interpretation that the 5 year admonition not to re-enter the U.S. without permission when he was last deported in 1995, was mistakenly interpreted by him to mean that after 5 years there was no longer any severe incarceration penalty against reentry. This in turn, led him to take the risks of returning illegally to provide income for his family who were suffering under the destitute aftermath of the flooding referenced above; and

c) his strong desire only to provide for his family through gainful employment in the United States, which was unavailable in Guatemala, as there are no other care taking or financial supports reasonably available to them.

Juan asserts that pursuant to the Application Notes (B) in 5H1.6 as follows:

(i) that under the flooding circumstances the loss of Juan's caretaking and essential financial support to his family will be substantial, direct and specific;

(ii) the loss of Juan's services to his family substantially exceeds the harm ordinarily incident to Juan's incarceration in light of the devastation caused by the floods;

(iii) there is no effective remedial or ameliorative programs reasonably available to replace Juan services to his family, making him irreplaceable;

(iv) a downward departure will get him deported again and return him to his family in a shorter time, therefore

effectively addressing the loss of his services.

III. Fast Track Programs Under the PROTECT ACT

Defendant has moved for a downward departure base upon the fact that, due to lack of a "fast track" disposition program in the District of Rhode Island, his conviction will result in a longer sentence than that issued to a defendant in a district that has implemented such a program.[1] To the extent that the lack of fast track program results in disparity among defendants charged in different districts with identical offenses, the lack of a program may be a factor that the court can consider in making a departure. Since lack of disparity among similarly situated defendants is a goal underlying the enactment of the federal sentencing guidelines, the fact that the District of Rhode Island lacks such a program is a factor that the Court could consider as a "mitigating circumstance" that "Was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. See 18 U.S.C 3553(b).

The PROTECT Act contains a provision wherein Congress directed the Sentencing Commission to establish "a policy

--------------------
1 Roy, Edward , Esq. Asst. Federal Defender, Memorandum in Support of Motion for Downward Departure: U.S. v. Mario Gudiel Lopez CR # 03-67 ML (2004), reproduced herein verbatim.

statement authorizing a downward departure of not more than four

---

[1] See generally Roy, Edward , Esq. Asst. Federal Defender, Memorandum in Support of Motion for Downward Departure: U.S. v. Mario Gudiel Lopez CR # 03-67 ML (2004).

levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney, see Sec. 401(m)(2)(B) of the PROTECT Act. Pursuant to that delegation of authority, the Commission established a policy statement, U.S.S.G. sec. 5K3.1, which states:

> "Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the U.S. Attorney for the district in which the court resides."

Pursuant to the PROTECT Act, then Attorney General Ashcroft's written (September 22, 2003) policy set forth:

> " 'fast track' Programs are based on the premise that a defendant who promptly agrees to participate in such a program has saved the government significant and scarce resources that can be used in prosecuting other defendants and has demonstrated an acceptance of responsibility above and beyond what is already taken into account by the adjustments contained in U.S.S.G 3E1.1"

The Attorney General attempts to justify "fast track" programs on the need to avoid a "significant strain" on the resources of a district, a concept that, while certainly important, is not mentioned in either the Sentencing Guidelines or in any associated legislation. The PROTECT Act itself never speaks to a significant strain on prosecutorial resources as being a criteria for the establishment of a "fast track" program. The Attorney General has in essence superimposed his own values on the legislative grant of authority given by the Congress to the Sentencing Commission. Unfortunately, the enactment of "fast track" programs under the Attorney General's written memorandum

will almost certainly result in disparity among similarly-situated defendant, an outcome that the sentencing guidelines were designed to avoid. In fact, the Sentencing Commission, in an October 2003 Report to Congress mandated by the PROTECT Act, specifically mentioned the possibility that fast track programs would cause sentencing disparities.

The PROTECT Act directed the Commission to:

> "(1) review the grounds of downward departure that are authorized by the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission; and
>
> (2) promulgate, pursuant to sec. 994 of title 28, USC;
>
> > (A) appropriate amendments to the sentencing guidelines, policy statements, and official commentary to ensure that the incidence of downward departures are substantially reduced;
> >
> > (B) a policy statement authorizing a downward departure of not more than 4 levels if the Government files a Motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney;..."

The Commission devoted considerable time to analyzing existing "fast track" programs and discussing the impact of these programs on future sentencing practices. In discussing the impact of the "fast rack" programs implemented under the PROTECT Act, the Commission stated with some caution:

> "The new statutory requirement that the Attorney General approve all early disposition programs hopefully will bring about greater uniformity and transparency among those districts that implement authorized programs. Defendants sentenced in districts without authorized early disposition programs, however, can be expected to receive longer

> sentences than similarly-situated defendants in districts with such programs. This type of geographical disparity appears to be at odds with the overall Sentencing Reform Act goal of reducing unwarranted sentencing disparity among similarly-situated offenders."U.S. Sentencing Commission, Report to Congress, October 2003 pp. 66-67

The Commission went on to observe that downward departures might be a means to the end of eliminating unwarranted disparity.

> "Furthermore, sentencing courts in districts without early disposition programs, particularly those in districts that adjoin districts with such programs, may feel pressured to employ other measures=downward departures in particular-to reach similar outcomes for similarly situated defendants. This potential response by sentencing courts could undermine the goal of the PROTECT Act to reduce the incidence of downward departures." U.S. Sentencing Commission, Report to Congress, October 2003 pp.67

Congress, by enacting legislation that clearly has the likelihood of creating sentencing disparity, has in effect sent "Mixed signals" to United States District Courts. Disparity among similarly situated defendants is not to be tolerated, unless expediency is given a higher priority in busier districts. if the overall goal of the establishment of the sentencing guidelines system is to avoid unwarranted disparities, then Congress' transmission of discretion to the Attorney General to establish where, and under what circumstances, "fast tracks" shall be created simply provides too much discretion to the Attorney General.

In this case, the defendant has no history of violence. He waive presentment of this case to a grand jury and consented to the filing of an information, then plead guilty to illegally reentering the United States after having been previously

deported approximately 23 days after his arraignment. Although the defendant has been previously deported, his motivation to return to the United States was simply to work. The defendant, if he were arrested and found in a border district, such as Arizona, California or New Mexico, would be looking at a four level downward departure.

The implementation of "fast track' disposition program in federal district courts have two direct systemic effects. Firs, the "fast track" program conserves judicial and prosecutorial resources, enabling courts to dispose of many additional prosecutions. Secondly, a uniform "fast track" policy benefits the federal criminal justice system by promoting uniformity among similarly situated defendants. If this court were to make a downward departure in this, and in other similar cases, the court's decision would ultimately benefit the criminal justice system by conserving resources and promoting uniformity among defendants convicted of identical crimes.

In light of the foregoing, the defendant seeks a four level downward departure to an adjusted offense level of 14, with the defendant having a criminal history category of II, yielding an offense level of 18 to 24 months. The defendant is willing to agree to be deported without any additional hearings.

Defendant,
**JUAN DESIDERIO RODRIGUEZ**
By his attorney,

MARK B. LAROCHE, ESQ. #4681
10 Dorrance Street Suite 515
Providence, RI 02903
(401) 751-1919

**CERTIFICATION**

I, the undersigned, hereby certify that a true copy of the foregoing Motion was served on March 23, 2006 to Stephanie Brown, Assistant U.S. Attorney, U.S. Attorney's Office, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903, and to Charleen L. Tryhubczak, U.S. Probation Office, 2 Exchange Terrace 3rd Fl. Providence, RI 02903.