IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 05-135S |
| | ) | |
| JUAN DESIDERIO RODRIGUEZ | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

Now comes the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, and hereby responds to defendant's Motion for Downward Departure.

Defendant posits two grounds for a downward departure; however, neither of them, either individually or in combination, are sufficient to justify a downward departure.

## DOWNWARD DEPARTURES

In light of United States v. Booker, 125 S.Ct 738 (2005), the guidelines are no longer mandatory in terms of their application by District Courts. However, Booker dictates that District Courts must consult the guidelines and must take them into account when sentencing. "[T]he guidelines remain part and parcel of the sentencing algorithm." United States v. Pho, ___ F.3d ___, 2006WL20574, C.A. 1 (RI) January 5, 2006. Sentencing courts are to "consult [the] Guidelines and take them into account when sentencing." Booker, 125 S.Ct. at 767; see also 18 U.S.C. § 3553(a)(4). Compliance with Booker necessitates that guidelines calculations be prepared by the United States Probation Officer. It also necessitates that the Court perform an analysis, in the appropriate case, as to whether a downward, or upward, departure is warranted.

As was the case previous to the Booker decision, District Courts must also consider those factors set forth in 18 U.S.C. § 3553(a), including: the applicable guidelines range; the nature, seriousness and circumstances of the offense; the history and characteristics of the defendant; protection of the public; deterrence to criminal conduct; the need to promote respect for law and provide for just punishment; the needs of the defendant for educational training, vocational training, medical care and other correctional treatment; the need to avoid unwarranted disparities among similarly situated defendants; and restitution concerns.

In terms of a guidelines analysis, pre-Booker case law still applies. Whether the guidelines are mandatory or advisory, such case law interprets and explains the guidelines. Each guideline applies to a heartland of typical cases. United States v. Carrion-Cruz, 92 F.3d 5, 6 (1st Cir. 1996). A District Court has discretion to depart from the guideline range if the Court finds that there exists an "aggravating or mitigating circumstance of a kind, to a degree, not adequately taken into consideration" by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b). However, not every mitigating or aggravating circumstance warrants a departure. United States v. Bogdan, 284 F.3d 324, 327 (1st Cir. 2002); United States v. Vasquez, 279 F.3d 77, 80 (1st Cir. 2002), and the guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Burns v. United States, 501 U.S. 129, 136-137 (1991).

The guidelines list several factors which are forbidden and cannot be used as grounds upon which to base a guidelines departure. Other factors are described as "encouraged" or "discouraged." If an encouraged factor is present, the Court may base a guidelines departure decision on that factor if the applicable guideline has not already taken it into consideration. If a

discouraged factor is present, or the encouraged factor has already been taken into account by the guideline, the Court may depart under the guidelines only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If the particular factor is not mentioned in the guidelines, the Court must decide whether the factor is sufficient to take the case out of the heartland. A departure based on an unmentioned factor will be "highly infrequent." Koon v. United States, 518 U.S. 81, 96 (1996); United States v. Dethlefs, 123 F.3d 39 (1st Cir. 1997).

A. Family Circumstances

Defendant claims that a lengthy incarceration would result in the continued loss of both his financial support to his family and his care-taking responsibilities. Section 5H1.6 of the guidelines states, in part, that "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Thus family ties and responsibilities are discouraged factors upon which to base a departure decision under the guidelines. To base a departure on this factor, the family ties or responsibilities must be present to an exceptional degree, distinguishing it from the ordinary case. United States v. Louis, 300 F.3d 78, 81-82 (1st Cir. 2002). As noted by the Louis Court:

> A defendant's incarceration will invariably cause hardship to his family. We cannot 'presume, as a general matter, that the Commission either overlooked or inadequately considered' such a consequence in formulating the guidelines. Id. (quoting United States v. Clase-Espinal, 115 F.3d 1054, 1057 (1st Cir. 1997)).

In Bogdan the Court said "Regrettably, the 'heartland' of cases under the Guidelines encompasses immense and heart-wrenching hardships." 284 F.3d at 330.

The factors identified by Rodriguez that his family lives in dire straights in Guatemala. His family is purported to have lost their home in a flood. However, presumably his family is currently living in some sort of residence while he is here in the United States. Rodriguez provides no explanation why his remaining here in prison will result in any different circumstances for his family other than the loss of his income. Such a loss is typical for any family which has a supporting family member incarcerated. There is nothing extraordinary about this. Downward departures from the guidelines based on this ground have been rejected by Courts where the circumstances were similar or worse than those put forth by defendant. See, United States v. Chestna, 962 F.2d 103 (1st Cir. 1992) (defendant's status as a single mother of four young children not an unusual family circumstance); United States v. Reyes-Rodriguez, 344 F.3d 1071 (10th Cir. 2003) (defendant's support of his wife, two children, and his poverty-stricken parents did not bring case outside the heartland); United States v. Carrasco, 271 F.3d 765 (8th Cir. 2001) (defendant, whose wife was disabled and was the primary support for three children, was not entitled to a family circumstances downward departure); United States v. Sweeting, 213 F.3d 95 (3rd Cir. 2000) (defendant's status as the sole support for five children, including one who suffered from Tourette's Syndrome, was insufficient to take the case out of the heartland); United States v. Kapitzke, 130 F.3d 820 (8th Cir. 1997) (fact that defendant's incarceration would place financial burden on wife, who would be left to support their two children alone, not justify departure); United States v. Archuleta, 128 F.3d 1446 (10th Cir. 1997) (defendant's status as single parent for two minor children and care giver for a diabetic mother did not take case outside the heartland); United States v. Cacho, 951 F.2d 308 (11th Cir. 1992) (mother of four small children not entitled to family circumstances downward departure); United

States v. Goff, 907 F.2d 1441 (4th Cir. 1990) (Nothing extraordinary where defendant was mother of three children, ages two through seven, who would have to live with defendant's ill mother in Ohio during defendant's imprisonment). In United States v. Brand, 907 F.2d 31 (4th Cir 1990), the Court reversed the District Court which had granted a downward departure based on family circumstances where the defendant's two children would have to be separated, living with a foster family and with her in-laws, during her incarceration. The Court stated:

> A sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children. It is apparent that in many cases the other parent may be unable or unwilling to care for the children, and that the children will have to live with relatives, friends, or even in foster homes. We, indeed have only recently affirmed a district court's refusal to depart downward based on quite similar mitigating circumstances:
>
> > "The [defendant] has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts spousal and parental relationships, and that current criminal behavior can often be partially explained by childhood abuse and neglect.
>
> United States v. Daly, 883 F.2d 313, 319 (4th Cir. 1989)." Id. at 33.

The fact that § 5H1.6 of the guidelines exists indicates that the Sentencing Commission considered that incarceration of a parent would result in significant hardships on other family members, including children. Having that in mind, the Commission chose to make family circumstances a discouraged factor.

In the instant case, Rodriguez has failed to demonstrate extraordinary family circumstances which would take him outside the heartland. It is not the Court which is responsible for defendant's inability to contribute to his family, that was something defendant

forfeited by his decision to traffic in drugs.

B. Fast-Track Program

The issue of the fast-rack program has been before the First Circuit before and that Court has already described in depth the background and statutory basis of the fast-track program, which permits reentry defendants in designated border districts a four-level sentencing reduction in certain circumstances. See generally United States v. Martinez-Flores, 428 F.3d 22, 25-26 (1st Cir. 2005); United States v. Melendez-Torres, 420 F.3d 45, 52 (1st Cir. 2005); USSG § 5K3.1.

Defendant says that the fast-track program is unfair in that it creates sentencing disparities as between similarly-situated defendants who commit reentry offenses in districts where the program is available and districts (such as this one) where it is not. Because a district court must consider the need to avoid unwarranted sentencing disparities in fashioning a discretionary post-Booker sentence, see 18 U.S.C. § 3553(a)(6), his thesis runs, the judge in this case may well impose a below-guidelines sentence based on the perceived unfairness of that disparity. Three decisions of the First Circuit, however, strongly support the view that a district court lacks the power to base a sentencing decision on this factor, even after Booker.

In Martinez-Flores, this Court rejected one of the legal arguments underlying the instant downward departure motion: that the fast-track program and the statute on which it is based violate the nondelegation doctrine. Martinez-Flores, 428 F.3d at 26-29.[1] It also rejected the defendant's Booker remand claim, which had been based on an assertion that, under the advisory

1. Earlier, the Court rejected the equal protection theory that defendant advanced in the district court. Melendez-Torres, 420 F.3d at 52-53 & n.5.

guidelines, the judge might give him a lower sentence because (according to him) the fast-track program produces unwarranted sentencing disparities for purposes of § 3553(a)(6). Id. at 29-30. In reaching this result, the Court concluded that the judge's sentencing remarks indicated that the judge "would not have considered any fast-track disparities 'unwarranted' even in an advisory Guidelines universe." Id. at 30. In a footnote, however, the Court went on to observe: "It is arguable that even post-Booker, it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable." Id. at 30 n.3.

The underlying rationale of this observation has now become the law of this circuit. The Court of Appeals recently held that, post-Booker, a district court may not impose a below-guidelines sentence based on its categorical disagreement with the 100:1 sentencing ratio for crack and powder cocaine offenses -- a ratio that is imbedded in the guidelines and in the statutory penalties around which the guidelines were structured. United States v. Pho, No. 05-2455, 2006 WL 20574, at *1 & *8-12 (1st Cir. Jan. 5, 2006). The First Circuit reasoned that because the so-called "disparity" in the punishments for these offenses is the product of a Congressional policy choice, it is not for district courts to override that judgment by adopting different ratios of their own. Id. at *8-12. The Court also observed that although the judge in that case had chosen a different ratio in an attempt to "ameliorate the disparity in sentences for crack and powder cocaine offenses, what counts is the uniformity in sentencing sought by Congress." Id. at *11 (emphasis in original). The Court continued: "Clearly, then, Congress intended that particular disparity to exist, and federal courts are not free to second-guess that type of decision." Id. Moreover, the Court noted, allowing judges to select their own preferred ratios

would create genuine disparities of a different kind. Id. at 10. The Court concluded: "This holding recognizes that sentencing decisions must be done case by case and must be grounded in case-specific considerations, not in general disagreement with broad-based policies enunciated by Congress or the Commission, as its agent." Id. at 12.

The logic of Pho is controlling here. As a result of Pho, it is now more than "arguable" that "it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable." Martinez-Flores, 428 F.3d at 30 n.3. As in Pho, Congress has placed its imprimatur on the "disparity" at issue. In essence, Congress has made a policy judgment that the benefits of early disposition programs outweigh the attendant costs in reduced sentencing uniformity, as the court pointed out below in rejecting defendant's departure theory: "Congress has determined that there are some situations where consistency gives way to expediency; and if the end result is some people get treated more leniently than others, then so be it. That's really the end result of the PROTECT Act." (Sen. Tr. 23.) Moreover, if judges are permitted to second-guess the wisdom of this statutorily-based sentencing system by handing down lower sentences to reflect their disagreement with it, they will undermine not only the program's policy goals but respect for the law generally.

There is a further problem. Allowing judges to base their sentencing decisions on their own views concerning the fast-track program would result in sentencing disparities of a different kind, and these disparities would not be "warranted." Some judges might think the program is unfair and adjust their sentences downward. Other judges might think the program is wise and maintain the status quo. Still other judges might think the program is flawed but that the solution

lies in raising the sentences for defendants who commit reentry offenses in districts where the program is available, rather than lowering the sentences for reentry defendants in the other districts. The result would be a lack of the "uniformity in sentencing sought by Congress." Pho, 2006 WL 20574, at *11 (emphasis in original). And this is the type of uniformity that counts. Thus, defendant's invocation of 18 U.S.C. § 3553(a)(6) is unavailing.

Most recently, the First Circuit noted that the disparities which result from the fast-track program "are the result of a congressional choice made for prudential reasons, implicitly qualifying the general aim of equality." United States v. Jimenez-Beltre, 1st Cir. No. 05-1268, March 9, 2006. (Remanded on other grounds).

Two other circuits have addressed this issue in glancing fashion. See United States v. Morales-Chaires, 430 F.3d 1124, 1127-31 (10th Cir. 2005); United States v. Simpson, 430 F.3d 1177, 1187-90 (D.C. Cir. 2005). In Morales-Chaires, the Tenth Circuit issued a meandering opinion which cited this Court's footnote in Martinez-Flores and summarized the revolt now taking place in the district courts; but the opinion ended inconclusively. Morales-Chaires, 430 F.3d at 1127-31. There was a similar revolt over the 100:1 crack-powder sentencing ratio until this Court put a stop to it with the Pho decision. Pho, 2006 WL 20574, at *10; United States v. Perry, 389 F. Supp. 278 (D. R.I. 2005).

C. Combination of Factors

The government has argued that neither of the alleged grounds put forth by the defendant warrants a departure. Even if this Court considers the grounds in toto, departure is not warranted

since the case is not "exceptional" nor is each characteristic "present to a substantial degree." USSG § 5K2.0(c)(1) and (2).

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

STEPHANIE S. BROWNE
Assistant U. S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of March, 2006, a copy of the within Government's Response was sent by ordinary mail and postage prepaid to Mark B. Laroche, 10 Dorrance Street, Suite 515, Providence, RI 02903.